## Sacchetti, Appellant, *v.* Sandt.

*Trespass—Malicious abuse of civil process—Extension of time on mortgage—Consideration—Entry of judgment—Execution.*

Where a mortgage provides that on default in payment of interest the whole principal shall become due, and the mortgagee at a time when interest has been unpaid promises without consideration to extend the time of payment of the mortgage for one year, provided that the interest should be paid, but subsequently the mortgagee enters up judgment on the bond, issues execution for the full amount of the mortgage, and the mortgagor pays to the sheriff the full amount claimed, the latter cannot thereafter maintain against the mortgagee an action of trespass for malicious abuse of civil process.

Argued Dec. 7, 1915. Appeal, No. 139, Oct. T., 1915, by plaintiff, from judgment of C. P. Northampton Co., April T., 1912, No. 47, for defendant n. o. v. in case of Ovofrio Sacchetti v. C. Flemming Sandt, Executor of last will and testament of S. S. Apple, deceased. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Trespass for malicious abuse of civil process. Before STEWART, P. J.

At the trial the jury returned a verdict for plaintiff. Subsequently the court entered judgment for defendant n. o. v.

STEWART, P. J., filed the following opinion:

This is a motion for judgment non obstante veredicto. On the trial the defendant presented a point that "under

the law and the evidence the verdict must be for the defendant." This was refused. The conduct of Dr. Apple towards the plaintiff was so unfair and unreasonable, under the circumstances testified to by reliable and disinterested witnesses (although subsequent proceedings in this court, resulting in the appointment of a guardian for Dr. Apple, may be a sufficient excuse), and the verdict of the jury only representing the sum that the plaintiff was compelled to pay unnecessarily, we would be disposed to allow this verdict to stand, if it could be supported. The plaintiff has undoubtedly declared for the malicious abuse of legal process. After setting forth the evidential facts, he declares that "for the purpose of oppressing and annoying and injuring the plaintiff, and for the purpose of extorting money from him in excess of what was then due, did, on the following day, to wit, March 13, 1912, at the county aforesaid, cause execution to be issued against the plaintiff upon a judgment entered on the bond or obligation aforesaid, thereby abusing the civil process of the said court, and did then and there demand of the plaintiff more money than was due." (Paragraph 7th.) It will not be necessary to refer at length to the difference between a malicious abuse of legal process and a malicious use of legal process. They are set forth in Mayer v. Walter, 64 Pa. 283; and Whelan v. Miller, 49 Pa. Superior Ct. 91. In the former case the syllabus is: "A malicious abuse of legal process is where it is employed for some unlawful object not the purpose intended by law. In an action for such abuse it is not necessary to prove that the action on which the process issued has been determined, or to aver that it was sued out without probable cause......Legal process may be maliciously used so as to give a cause of action, where no object but its proper effect and execution is contemplated. In such case both malice and want of probable cause must be averred and proved, and the proceeding must be determined before an action can be maintained." The gist of the plaintiff's declaration and of his case is found in

the allegation which the verdict of the jury establishes as true, that Dr. Apple extended the time for the payment of the principal of the mortgage for one year from April 19, 1912. This extension, however, was coupled with the requirement that the interest should be paid. It appears that the plaintiff herein was in default for the interest due on October 19, 1911. The plaintiff's theory is that when fi. fa. issued, on March 13, 1912, it was issued for more money than was then due; as he puts it, in the quotation above, "for the purpose of extorting money from him in excess of what was then due." The fact, however, was otherwise, because by the terms of the bond and mortgage, on default of the interest, the principal was due unless the verbal agreement, testified to, changed this condition. On the trial we relied on the case of Sommer v. Wilt, 4 S. & R. 19, particularly that portion of the report which reads as follows: "Here the plaintiff offered a parol evidence to prove, that it had been agreed no execution should issue without six months' notice. To this Phillips & Kittera, for the defendant, objected, insisting, that parol evidence could not be received to contradict a bond, and cited 2 Yeates 370. J. R. Ingersoll & Binney for the plaintiff, answered, that the evidence was not offered to contradict the bond, which was confessed as made, but to establish a parol agreement subsequent to the bond, and distinct from it. By the Court: The evidence is directly in support of the plaintiff's declaration, to which the defendant pleaded non cul. Whether such an agreement be a good cause of action is another matter. The defendant might have demurred, or he may move in arrest of judgment, if the narr. does not set forth a good cause of action. The evidence must be admitted." Subsequent examination has convinced us that that agreement, if made, did not bind Dr. Apple, because there was no consideration for it. In Johnston v. Thompson, 4 Watts 466, testimony was received to show an extension of time to the principal of a note so as to relieve the surety. The lower court termed the extension "a mere in-

dulgence." The Supreme Court said: "Giving the evidence its greatest effect, it showed but a willingness to indulge, which, even had it been an explicit promise, would not have restrained the plaintiff, for defect of consideration. In that sense he had given time, but in that sense he had not disabled himself. Had he even been diverted from immediate pursuit by payment of interest and a promise of punctuality in future, it would not have affected him; nor would a promise, on such consideration, to wait for a specified period, have been a suspension of his right of action." In Zeibert v. Grew, 6 Wharton 404, the terre-tenant alleged there had been an extension of the time of payment of a mortgage. The Supreme Court said: "It is not alleged that the mortgagors were drawn into the purchase and consequent execution of the mortgage by the alleged assurance that the principal would not be called for; and this distinguishes the case from Miller v. Henderson, 10 S. & R. 290, and it brings it within the authority of Hain v. Kalbach, 14 S. & R. 159. The promise not to sue seems to have been gratuitous, and intended to mean nothing—an assurance rather than an engagement." In Henry & Co. v. Patterson, 57 Pa. 346, certain creditors agreed to give time to their debtor. Mr. Justice AGNEW said: "The paper was a simple agreement for forbearance for one year. As between Hughes and the creditors it was not binding, there being no consideration. He could maintain no action upon it, nor make a valid promise to enable him to stay an execution." It is, therefore, apparent as appears in the above authorities, that this extension of time does not help the plaintiff. If he had gone into court, and asked to have the execution stayed, the court would not have stayed it. It was a mere "gentleman's agreement." Nor does the fact that the witnesses testified that he was ready to pay the interest help the matter. In Kramer v. Stock, 10 Watts 115, it was held: "To maintain an action in the case, it is necessary that the party charged should have committed an illegal act, from which positive or consequen-

tial damages has ensued.   To sue for debt which had been previously tendered to the party, is not actionable."   See also Busch v. Groswith, 159 Pa. 623; and Atkinson v. Walton, et al., 162 Pa. 219.   If the plaintiff had followed the course indicated in Lewis v. Germania Savings Bank, 96 Pa. 86, and had proved his willingness to pay, the court might have deducted the attorney's commissions. This action, however, depends upon equitable principles. Again, the plaintiff paid the full amount which Dr. Apple claimed, to the sheriff.   He settled that proceeding without any effort to contest it, and under the authorities he is now estopped from bringing suit.   In Herman v. Brookerhoff, 8 Watts 240, it is held: "In an action for maliciously suing out a capias ad respondendum, the plaintiff is estopped from denying the existence of a probable cause of action, by the fact that a judgment was rendered against him in the suit in which he was arrested."   In Clark v. Everett, 2 Grant 416, it is held: "If a defendant is arrested upon a debt that is not due, and the matter is compromised, he paying the money without objection, this is an admission that the debt itself, and not merely the time, is the matter of controversy, and will preclude the defendant from sustaining an action against the plaintiff for maliciously bringing his action."   In Murson v. Austin, 2 Philadelphia 116, Judge HARE said: "Nothing, indeed, could be more unjust than to allow a defendant, who has been brought into court by legal process, to adjust or compromise the claim made against him, and then institute proceedings against the plaintiff, on the ground that the claim was without even a semblance of foundation, in contravention of the well settled rule which prohibits two suits in every case, where the matter might be determined in one."   In Mayer v. Walter, 64 Pa. 283, it is held: "When the proceeding has been terminated by a compromise an action for damages will not lie."   A case very similar in some of its facts, is Reams v. Pancoast, 111 Pa. 42.   The lower court had submitted the case to the jury in a charge similar to our

charge.    Mr. Justice PAXSON said: "There was no evidence of the malicious use or abuse of civil process.    The lease contained a clause authorizing a confession of judgment in ejectment for nonpayment of rent.    The rent was in arrear; a judgment was confessed; a writ of haberi facias possessionem was issued, and under it the sheriff ejected the plaintiff and delivered the possession of the house to the defendant.    All this was done in accordance with the forms of law.    We attach but little weight to the alleged tender of the rent on the 5th of February.    The testimony does not make out a tender.    There was some talk, nothing more."    Judgment was reversed without a venire.    For the above reasons the defendant's motion must prevail.

And now, February 8, 1915, motion for judgment non obstante veredicto, is granted, and judgment is directed to be entered on the verdict in favor of the defendant upon the payment of the jury fee, and the evidence taken upon the trial is certified and filed and made part of the record.

*Error assigned* was the judgment of the court.

*George W. Geiser,* for appellant, cited: Atkinson v. Walton, 162 Pa. 219; Mayer v. Walter, 64 Pa. 283; Sommer v. Wilt, 4 S. & R. 19.

*J. W. Paff,* of *Smith, Paff & Laub,* for appellee, cited: Jenkins v. Fowler, 24 Pa. 308; Kramer v. Stock, 10 Watts 115; Reams v. Pancoast, 111 Pa. 42; Whelen v. Miller, 49 Pa. Superior Ct. 91; Siegel v. Netherlands Co., Inc., 59 Pa. Superior Ct. 132.

OPINION BY HEAD, J., October 9, 1916:

If the testimony of the plaintiff be accepted as true, he may well complain he was subjected to some harsh treatment by his creditor.    There are many injuries of that character which cannot be redressed by a court ad-

ministering justice according to law.  In our judgment the opinion filed by his honor, Judge STEWART, in support of the judgment entered for the defendant non obstante veredicto, furnishes sound legal grounds for the conclusion he reached.  It would serve no good purpose to attempt to state them in other or different language. For the reasons given in that opinion we conclude the judgment was properly entered.

Judgment affirmed.